Thurman Ross MAYFIELD, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–04–00040–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Oct. 12, 2004.

Decided Jan. 4, 2005.

Ebb B. Mobley, Longview, for appellant.

Ray Bowman, Asst. Dist. Atty., Longview, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

Thurman Ross Mayfield appeals from his conviction of two counts of aggravated robbery. The jury assessed his punishment at fifty years' imprisonment on each count. The sentences are concurrent. He contends the trial court erred by overruling his motion to suppress evidence obtained from a suggestive photographic lineup.

The evidence shows that the victim in one count, Ricky Crain, was approached while walking home from his job by a black male who walked and talked with him for a couple of minutes. The man then pulled a knife on Crain and took his sun visor, shoes, and pager. Crain was not carrying any money.

The following day, June 15, 2003, the victim in the other count, Craig Ansel, was approached by a black male while waiting at the bus terminal. The man chatted with Ansel for a while and then pulled a knife on Ansel and demanded money. Ansel gave him his wallet. Mayfield was arrested almost immediately, and Ansel identified him as the robber.

On June 16, police detective David Cheatham took a photographic array of six individuals to Crain's home. Crain identified Mayfield as the robber. The contentions raised in this appeal do not question Ansel's identification of Mayfield, but only Crain's identification of Mayfield as the person who robbed him.

After a pretrial hearing, the trial court denied Mayfield's motion to suppress. At trial, Crain identified Mayfield as the robber. Counsel did not object to the in-court identification.

We have recently addressed a similar situation in *Wallace v. State*, 75 S.W.3d 576, 584 (Tex.App.-Texarkana 2002), *rev'd on other grounds*, 106 S.W.3d 103 (Tex. Crim.App.2003).

■ The underlying basis for a complaint about identification is that a pretrial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused due process of law. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). In *Wallace*, we recognized that, generally, the defendant's attack is against an in-court identification as being tainted by an impermissibly suggestive pretrial identification procedure. In this case, Mayfield filed a motion to suppress the identification, with the hearing held outside the

jury's presence. *See Barley v. State*, 906 S.W.2d 27, 32 (Tex.Crim.App.1995). As part of that proceeding, counsel also complained that any in-court identification would be tainted by the pretrial identification procedure. Specifically, counsel stated, "Basically we're just asking that you suppress the photo I.D. We're asking that you suppress any evidence—I mean any testimony from the witness based on the photo I.D. due to the suggestive nature of it." We do not approve of the array used in this case. Using a photograph of the suspect wearing distinctive jail clothing along with five other individuals wearing normal clothing in the array is impermissibly suggestive. *See Turner v. State*, 614 S.W.2d 144, 146 (Tex.Crim.App. [Panel Op.] 1981). The more serious question is whether that objection has been waived.

■ In *Wallace*, the defendant objected to the introduction of the photographic array, but did not object to the in-court identification of the defendant by the witnesses who had viewed the array. *Wallace*, 75 S.W.3d at 584. When a defendant is contending the in-court identification was improperly suggested by a photographic array, we recognized in *Wallace* that there should have been a trial objection to such identification made by the witnesses who viewed the array. *Id.* The failure to complain about or object to in-court identifications constituted a procedural default and waiver of any complaint on appeal. *In re G.A.T.*, 16 S.W.3d 818, 827 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). Here, the events are different. When the photographic array was offered at trial, counsel stated, "No objection," thereby waiving the previous objection made at the suppression hearing to such an array. However, when Crain identified Mayfield as the robber, counsel made no comment. The question is whether counsel's waiver of the objection to introduction of the photographic array also effected a waiver of the objection to the in-court identification based on the impermissible suggestiveness of that array. We find that it did not.

■ When a pretrial motion to suppress evidence is overruled, the defendant need not subsequently object at trial to the same evidence in order to preserve error on appeal. *Wyle v. State*, 777 S.W.2d 709, 715 n. 5 (Tex.Crim.App.1989); *Livingston v. State*, 739 S.W.2d 311, 334 (Tex.Crim. App.1987); *Gearing v. State*, 685 S.W.2d 326, 329 (Tex.Crim.App.1985); *Welch v. State*, 993 S.W.2d 690, 694 (Tex.App.-San Antonio 1999, no pet.); *Bennett v. State*, 831 S.W.2d 20, 21 (Tex.App.-El Paso 1992, no pet.); *see* TEX.R. EVID. 103(a)(1). However, when the defendant affirmatively asserts during trial that he or she has "no objection" to the admission of the complained-of evidence, he or she waives any error in the admission of the evidence despite the pretrial ruling. *Livingston*, 739 S.W.2d at 334; *Gearing*, 685 S.W.2d at 329; *Montes v. State*, 876 S.W.2d 538, 539 (Tex.App.-El Paso 1994, no pet.).

We conclude that, even though the complaint to the introduction of the photographic array itself was waived by the "[n]o objection" comment, the complaint about the taint arising from that array was not. That objection had been properly presented during the suppression hearing and was not affirmatively waived during trial and remained viable. Therefore, we will analyze the admissibility of the in-court identification of Mayfield by Crain.

■ Determining the admissibility of an in-court identification involves a two-step analysis: (1) whether the out-of-court identification procedure was impermissibly suggestive, and (2) whether that suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S.

377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Barley*, 906 S.W.2d at 33. A defendant bears the burden of establishing by clear and convincing evidence that the pretrial identification procedure was impermissibly suggestive. *Barley*, 906 S.W.2d at 33–34. The analysis requires an examination of the totality of the circumstances surrounding the identification. *Id.* at 33; *Morrow v. State*, 139 S.W.3d 736, 741 (Tex.App.-Texarkana 2004, no pet.). We have found that the procedure was impermissibly suggestive and that Mayfield has met the first step in the analysis.

■ In considering the second factor, five non-exclusive factors should be "weighed against the corrupting effect of any suggestive identification procedure in assessing reliability under the totality of the circumstances": (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex.Crim.App.1999); *see Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

■ We are to consider the five *Biggers* factors, all issues of historical fact, deferentially in a light favorable to the trial court's ruling. *Ibarra*, 11 S.W.3d at 195. The factors, viewed in this light, are then to be weighed de novo against "the corrupting effect" of the suggestive pretrial identification procedure. *Id.* at 195–96; *Loserth v. State*, 963 S.W.2d 770, 773–74 (Tex.Crim.App.1998).

■ Even though we have concluded that the identification procedure was impermissibly suggestive, we find that it did not create a substantial likelihood of irreparable misidentification. The record clearly demonstrates that the in-court identification by Crain was of an independent origin. Crain testified unequivocally that his identification was based on his observations at the time of the offense. He testified he walked and talked with the defendant, in the light of day, for several minutes before being robbed, and he saw the robber's face clearly. Crain testified that there was "[n]o doubt" that Mayfield was the robber and that he remembered Mayfield "[f]rom that day that it happened." Crain provided a description of the robber and the clothing he was wearing that was consistent with Mayfield's actual appearance. Crain's in-court identification occurred approximately nine months after the robbery. Based on the facts recited above, the trial court could reasonably conclude Crain had an adequate opportunity to observe Mayfield and formulate a basis for his in-court identification. Weighing this evidence of reliability against the suggestiveness of the pretrial identification procedure, we conclude that no substantial risk of irreparable misidentification was created to deny Mayfield due process. *See Simmons*, 390 U.S. at 384, 88 S.Ct. 967. The contention of error is overruled.

We affirm the trial court's judgment.